# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARMEN HARSHFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 10-2398-JWL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

# MEMORANDUM AND ORDER

Plaintiff seeks review of a partially favorable decision of the Commissioner of Social Security (hereinafter Commissioner) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). In that decision, the Commissioner denied disability insurance benefits (DIB) and supplemental security income (SSI) for any time before March 1, 2009, but found Plaintiff disabled beginning on that date. Because DIB is not available if disability begins after a claimant's disability insured status expires, and because Plaintiff's insured status expired on December 31, 2008, the administrative law judge (ALJ) determined Plaintiff is not eligible for DIB under Title II of the Act, but directed the "component of the Social Security Administration responsible for authorizing

supplemental security income [to] advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made." (R. 24). Plaintiff asserts that "the ALJ awarded Harshfield benefits under Title XVI [instead of Title II] and [thereby] significantly reduc[ed] her monthly benefits and eligibility for Medicare." (Pl. Br. 2). Therefore, the court will assume Plaintiff began receiving SSI benefits based upon the ALJ's decision. Finding error in the ALJ's credibility finding, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.      Background**

Plaintiff applied for DIB and SSI on October 1, 2007, alleging disability since June 1, 2006. (R. 261-76). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 129-32, 170). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael A. Lehr on December 4, 2008. (R. 91-128). At the hearing, testimony was taken from Plaintiff and from a vocational expert. Id. The ALJ issued an unfavorable decision on March 2, 2009 with which Plaintiff disagreed, sought Appeals Council review, and submitted additional evidence to the Council. (R. 133-44, 221-22, 511-12). The Appeals Council found the evidence new and material, and remanded for further development. (R. 147-49). On remand, ALJ Lehr received additional evidence

2

and held a hearing on August 26, 2009 at which Plaintiff again appeared represented by a second attorney, and Plaintiff and a vocational expert testified.  (R. 15, 25-88, 513-20).  At the hearing, Plaintiff amended her onset date to April 7, 2006.  (R. 15, 30).  On December 4, 2009, the ALJ issued his decision finding that Plaintiff became disabled on March 1, 2009 but was not disabled at any time before that date.  (R. 15-24).  Plaintiff disagreed with the determination that she was not disabled at any time before March 1, 2009, and once again sought Appeals Council review.  (R. 7-9).  The Council found no reason for review, and denied Plaintiff's request.  (R. 1-4).   Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision.  (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor

substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a

4

determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses her RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ (1) erred in failing to obtain the services of a medical advisor at the hearing, and therefore erroneously inferred an onset date; and (2) erred in

evaluating the credibility of Plaintiff's allegations of symptoms resulting from her impairments. The Commissioner argues that substantial evidence supports the ALJ's credibility findings and onset date.

The court finds error necessitating remand in the ALJ's credibility evaluation. As both parties admit, a claimant's allegations are a relevant factor in determining disability onset. (Pl. Br. 10) (citing Social Security Ruling (SSR) 83-20); (Comm'r Br. 11) (same); SSR 83-20, 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 49 (1992) ("Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence."). Therefore, it will be necessary for the Commissioner to determine the onset date after he has properly evaluated the credibility of Plaintiff's allegations. This determination will necessarily include deciding whether an onset date may reasonably be ascertained based on record evidence, or whether it will be necessary to secure more evidence, or call on the services of a medical advisor to establish a medical basis to infer an onset date. SSR 83-20, 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 50-52. Consequently, it would be premature to address Plaintiff's argument that a medical advisor must be used in this case.

### III. Discussion

Both parties agree that Plaintiff is now disabled. (R. 24); (Pl. Br. 7); (Comm'r Br. 13). The issue is whether Plaintiff was disabled at any time before March 1, 2009. Plaintiff points out that she became age fifty on February 17, 2006, almost two months before her alleged onset date, April 7, 2006. Relying on the principal presented in the

Medical-Vocational Guidelines (the grids) that an individual over age fifty who is limited to sedentary work, who cannot perform past relevant work, and who has no transferable skills, is disabled; 20 C.F.R., Pt. 404, Subpt. P, App. 2, §§ 201.00(g), 201.10; Plaintiff argues that her impairments have limited her to sedentary work since she fell on April 7, 2006, that she cannot perform past relevant work and has no transferable skills, and that she is therefore disabled. (Pl. Br. 7-8).

### A. The Commissioner's Findings

The ALJ assessed Plaintiff's RFC twice in separate sections of his decision. (R. 18-22). He first assessed an RFC for the period before March 1, 2009, id. at 18-22, and then for the period beginning March 1, 2009. Id. at 22. In his first RFC assessment, the ALJ summarized Plaintiff's allegations and the record evidence. Id. 19-20. He found Plaintiff's allegations "not credible prior to March 1, 2009, to the extent they are inconsistent with the residual functional capacity assessment." Id. at 19. He considered the medical opinions of record, and the third-party statement of Plaintiff's daughter, and gave "considerable weight" to the opinion of the state agency medical consultants, but "little weight" to the opinion of Plaintiff's daughter. Id. at 21. The ALJ explained the evidentiary basis for each of the functional limitations assessed in the RFC, and stated nine reasons justifying his credibility finding. (R. 20-21). The reasons for discounting Plaintiff's allegations were: (1) the allegations "are not supported by the objective medical evidence and [(2)] examination findings;" (3) Plaintiff's "treatment has been essentially routine and conservative in nature," (4) the treating physician did not

7

recommend surgery; (5) Plaintiff declined narcotic medication and injections which were offered by her physician; (6) Plaintiff admitted not following recommendations from her physician regarding physical therapy and smoking cessation, id. at 20; (7) Plaintiff's daily activities are not as limited as her allegations of symptoms and functional limitations would suggest; (8) Plaintiff's poor work history suggests "a choice not to work;" and, (9) Plaintiff worked after her alleged onset date performing tasks inconsistent with her allegations of limitations. Id. at 21.

The ALJ explained his RFC assessment for the period beginning March 1, 2009 in his discussion of finding number 6 which is reproduced here in its entirety:

> **6. After careful consideration of the entire record, the undersigned finds that beginning on March 1, 2009, the claimant has the residual functional capacity to perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).**
>
> In reaching this conclusion, the undersigned finds that beginning on March 1, 2009, the claimant's allegations regarding her symptoms and limitations are generally credible. The claimant testified that she fell in March 2009 causing her back pain to be much worse. She testified that she has to take more hydrocodone as a result of the increased back pain. The claimant stated she sometimes limps and favors her right leg due to pain from her back. The claimant was assessed with chronic back pain with radiation of pain at her August 11, 2009 doctor's appointment and a second epidural steroid injection was recommended. (Exhibit 18F)
>
> Due to the claimant's increased back pain from a fall in March 2009, it is reasonable to conclude that beginning on March 1, 2009, she is limited to less than sedentary work.

(R. 22) (bold in original).

### B. The Parties' Arguments

Plaintiff argues that the ALJ failed to explain why Plaintiff was not disabled "on February 28, 2009 but suddenly became disabled on March 1, 2009," (Pl. Br. 13), and that "a credibility finding cannot be based 'on an intangible or intuitive notion about an individual's credibility.'" (Pl. Br. 15) (quoting SSR 96-7p, 1996 SSR LEXIS 4).[1] She next argues that the ALJ erred in relying on Plaintiff's limited daily activities because the Tenth Circuit has held that "[t]he sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." (Pl. Br. 14) (quoting Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993)). Finally she asserts that her daily activities are consistent with sedentary work, not light work, and therefore grid rule 201.10 requires a finding of "disabled." (Pl. Br. 15).[2]

The Commissioner argues that the ALJ applied the correct legal standard for evaluating the credibility of Plaintiff's allegations of symptoms (Comm'r Br. 4-5), and then cites to each reason the ALJ gave to discount Plaintiff's allegations and explains

---

[1]The court notes that Plaintiff did not include a pinpoint citation, but the court was able to locate Plaintiff's quotation at 1996 SSR LEXIS 4, at *11.

[2]In her brief, Plaintiff confusingly cites to both "grid rule 201.02," (Pl. Br. 7, 8, 15) and "grid rule 201.10," (Pl. Br. 8), but the court recognizes that rule 201.10 is the one that actually supports Plaintiff's argument. 20 C.F.R., Pt. 404, Subpt. P, App. 2 §§ 201.00(g), 201.10. Rule 201.02 applies only to persons of "advanced age," (age 55 and over). Id. at §§ 201.02, 201.00(f); see also, 20 C.F.R. §§ 404.1563(d, e), 416.963(d, e) (explaining age categories of "person closely approaching advanced age" (age 50-54), and "person of advanced age"). Although Plaintiff turned 55 on February 17, 2011, she was 50 to 53 at all times relevant to the ALJ's decision at issue here.

9

how, in his view, substantial evidence in the record supports that reason. Id. at 6-10. Finally, the Commissioner argues that the credibility finding should be affirmed in this case because an ALJ's credibility determination is worthy of great deference, and must be affirmed if supported by substantial evidence in the record as a whole. Id. at 10 (citing Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir. 1990); Fowler v. Bowen, 876 F.2d 1451, 1455 (10th Cir. 1989); Campbell v. Bowen, 876 F.2d 1518, 1522 (10th Cir. 1987)).

### C.     The Court's Analysis

Plaintiff's argument that the ALJ failed to explain why Plaintiff was not disabled before March 1, 2009 but suddenly became disabled on that date, is meritless. As quoted above, the ALJ specifically noted that Plaintiff fell in March 2009, making her back pain "much worse," requiring her to take more hydrocodone and to limp and favor her right leg sometimes, and resulting in epidural steroid injections. (R. 22). He found, "Due to the claimant's increased back pain from a fall in March 2009, it is reasonable to conclude that beginning on March 1, 2009, she is limited to less than sedentary work." Id. The ALJ clearly explained what it was that changed, causing him to find that Plaintiff became disabled in March 2009.

As the Commissioner asserts, the ALJ applied the proper legal framework from Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) to his credibility determination. Plaintiff does not argue otherwise. Moreover, as Plaintiff contends, a credibility finding cannot be based "on an intangible or intuitive notion about an individual's credibility." SSR 96-7p, West's Soc. Sec. Reporting Serv., Rulings 136 (2010). An ALJ's credibility

10

determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Hackett, 395 F.3d at 1173(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).

As discussed above, the ALJ gave nine reasons for discounting the credibility of Plaintiff's allegations as to the period before March 1, 2009.  Plaintiff only contests reason number (7)--"the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (R. 21).  The Commissioner provided argument and evidentiary support from the decision and the record for each of the reasons relied upon by the ALJ (Comm'r Br. 6-10), but Plaintiff did not provide a contrary argument for any reason except number (7).  (Pl. Br. 13-14).  Therefore, in this order the court does not consider the propriety of any of the ALJ's eight other stated reason.[3]

---

[3]The court notes, however, that it has serious doubts regarding the propriety of reasons number (5) and number (6)--Plaintiff declined narcotic medication and injections which were offered by her physician, and admitted not following recommendations from her physician regarding physical therapy and smoking cessation.  The Tenth Circuit long

11

Plaintiff argues that she provided similar testimony regarding her activities both before and after March 1, 2009, and implies that the credibility finding <u>must</u> be the same for both periods of time. The court does not agree. As discussed above, the ALJ noted differences in Plaintiff's testimony at the second hearing on March 2, 2009. As the decision suggests, Plaintiff testified at the second hearing that she can no longer pick up her grandson, that her knees give out on her, that she can only walk two blocks, that she had a fall in March 2009 and her back pain is now worse, that she now takes hydrocodone for pain, that she is scheduled for epidural injections, that she can sit only thirty minutes at a time, that she sometimes limps and favors her right leg, that she quit smoking three months before the second hearing, that she no longer walks her dogs, that she no longer watches her grandson, and that she quit mowing the lawn. The record supports the ALJ's findings both of differences in Plaintiff's capabilities after March 2009, and that her limitations have increased. The evidence does not <u>require</u> that the ALJ make the same credibility finding both before and after March 1, 2009.

---

ago held that, "In reviewing the impact of a claimant's failure to undertake treatment, . . . [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." <u>Frey v. Bowen</u>, 816, F.2d 508, 515 (10th Cir. 1987). In 2000, the Tenth Circuit clarified that the <u>Frey</u> test is not required where the facts and circumstances reveal that the claimant did not fail to follow prescribed treatment, but rather failed to make appropriate attempts to relieve her symptoms. <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).

Because the treatment referred to in number (5) or number (6) was "offered" or "recommended" by Plaintiff's physician (prescribed?), it would appear at first blush that the <u>Frey</u> test is applicable in this case. On remand, the Commissioner should consider whether these reasons are proper, and whether the <u>Frey</u> test must be applied here.

However, Plaintiff also argues that reason number (7) is improper because the daily activities at issue for the period before March 1, 2009 are consistent only with "sedentary," and not "light" exertional work as suggested by the ALJ, and because the sporadic performance of such activities does not establish that she was capable of substantial gainful activity before March 1, 2009. As Plaintiff argues, the Tenth Circuit has long held that the sporadic performance of minimal activities does not establish that a claimant is able to work. E.g., Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (working in the yard, performing a few household tasks, working on cars, taking occasional trips with brother in camper); Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (jogging and intermittent work as a janitor); Frey, 816 F.2d at 516-17 (daily activities); Thompson, 987 F.2d at 1490 (minimal daily activities). Therefore, when an ALJ wants to rely upon daily activities to discount the credibility of a claimant's allegations it will be necessary for him to explain which activities are inconsistent with which allegations. And, if he is looking at all daily activities in general, he must explain why those activities preclude work activity in the particular circumstances of the case at issue. Therefore, the court must determine in this case whether the ALJ properly explained his rationale for finding that Plaintiff's daily activities support a finding that her allegations were not credible before March 1, 2009.

The ALJ provided a specific rationale for reason number (7):

In her Function report dated October 11, 2007, the claimant stated she had no trouble taking care of her personal needs; she fed and walked her dogs and watched her grandchildren a few days a week. (Exhibit 5E)[(R. 347-

13

> 58).] The claimant testified at her first hearing that she does all the household chores including housecleaning, preparing meals, doing the dishes and laundry. She also reported that she mowed the lawn with a riding lawn mower and shopped for groceries while leaning on a cart. Although the claimant testified that she cannot do these activities as well as she once could and they take more time to complete; this level of ability is consistent with light duty.

(R. 21). The court agrees with Plaintiff that the activities relied upon by the ALJ do not establish a level of activity consistent with "light work" as defined in the regulations.

"Light work" is defined as the ability to lift, carry, and/or push and pull, up to twenty pounds occasionally and ten pounds frequently; along with a good deal of walking or standing, or with sitting most of the time with some pushing or pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). Consequently, the full range of light work is usually described as work requiring lifting and carrying as described above, along with the ability to sit, stand, and/or walk about six hours each in an eight-hour workday. E.g., 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10, 1983 WL 31251, *5-6. The court agrees with the ALJ's premise that in certain circumstances, walking dogs, watching grandchildren "a few days a week," doing all of a household's chores, mowing a lawn with a riding mower, and shopping for groceries could demonstrate a level of ability consistent with "light work." However, these are not such circumstances.

Plaintiff testified at the first hearing in 2008, that almost all of the activities relied upon by the ALJ involved considerable limitations beyond what is considered ordinary for "light work." She testified that the longest she had ever walked her dogs was seven blocks, and in that case she had to call and get someone to come and pick her up. (R.

14

105). Later in her testimony, she testified that when she walks the dogs she usually "just take[s] them up and around the corner." (R. 118). With regard to her grandson, Plaintiff testified that she sees him twice a week. (R. 107). She was asked, "Do you ever watch him?" to which she responded, "Yes. But I have, my mother's there. She helps, too." Id. Plaintiff testified that she tries to do everything around the house, that it takes her a long time, and that the house was currently "a mess" although she is not habitually a poor housekeeper. Id. at 112-13. She testified that she doesn't move furniture, that she will begin cooking or doing dishes for ten or fifteen minutes, and when her back starts hurting she will sit down or lie down "until it eases up." Id. at 113-14. She testified that she drags her laundry basket because it hurts to pick it up, and that it takes forever to do the laundry. Id. at 114. She testified that she does the grocery shopping "sometimes," but that "he says he can spend less than I do so he does it." (R. 114). Later, she testified that when she goes to the store she has "to use the cart to hang on to." Id. at 118.

  The ALJ stated that "Although the claimant testified that she cannot do these activities as well as she once could and they take more time to complete; this level of ability is consistent with light duty." (R. 21). The ALJ's characterization of the testimony does not reflect the limitations testified by Plaintiff. Although it is true that Plaintiff stated she could not do these activities as well as previously and that they take longer to complete, she also stated specific limitations as discussed above which are short of the requirements of "light work." The ALJ did not acknowledge Plaintiff's specific limitations, made no finding that her actual limitations were less than the limitations to

15

which she testified, and did not explain how he found that someone with the limitations stated would be able to meet the exertion requirements of "light work." In these circumstances, the court finds that the ALJ erred in using minimal daily activities to show that Plaintiff is able to work contrary to the rule of Broadbent, 698 F.2d at 413; Byron, 742 F.2d at 1235; Frey, 816 F.2d at 516-17; and Thompson, 987 F.2d at 1490.

      Because Plaintiff was over age fifty at all times relevant here, and because the ALJ found that she cannot perform her past relevant work and has no transferable skills, the evidence must show more than the mere ability to work at some level, it must show that Plaintiff is able to perform "light work." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(g). As Plaintiff argues, if she is unable to perform "light work" in the circumstances presented here, she must be found disabled beginning on the first day--after her fiftieth birthday--on which she became unable to perform "light work." Even though the court finds error in only one of the nine reasons given by the ALJ to find Plaintiff incredible, the court will not find "that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record;" Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004); because Plaintiff points to evidence suggesting that she was unable to perform "light work," and because the question of ability to perform "light work" is central in these circumstances to a determination of disability onset. Remand is necessary for the Commissioner to properly evaluate the credibility of Plaintiff's allegations of symptoms, and then to properly evaluate the date of onset of her disability.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 27th day of April 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**